OSCN Found Document:GANN v. STATE OF OKLAHOMA, et al.

 

 
 GANN v. STATE OF OKLAHOMA, et al.2026 OK 24Case Number: 122861Decided: 04/21/2026THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 24, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

TOM GANN, Appellant,
v.
STATE OF OKLAHOMA, ex rel., OKLAHOMA CORPORATION COMMISSION, and PUBLIC SERVICE COMPANY of OKLAHOMA, Appellees.

APPEAL FROM OKLAHOMA CORPORATION COMMISSION,
CAUSE NO. PUD2023-000086, ORDER NO. 746624

¶0 The Oklahoma Corporation Commission entered a final order in a public utility rate proceeding. State Representative Tom Gann, pro se, appealed that final order (Final Order). Under Okla. Const. art. IX, § 20, this Court retained the appeal as the Court with exclusive appellate jurisdiction. We conclude that the issues Gann raises in this appeal were not raised and exhausted before the Corporation Commission. The Final Order of the Corporation Commission is affirmed.

ORDER OF THE CORPORATION COMMISSION AFFIRMED

Tom Gann, Pro Se, Oklahoma City, Oklahoma, for Appellant.

Garry M. Gaskins, Ellen Carr, Ashley N. Youngblood, Thomas Grossnicklaus, Office of the Attorney General of the State of Oklahoma, Oklahoma City, Oklahoma, for Appellee State of Oklahoma.

Patricia L. Franz, Daniel P. Boyle, Oklahoma Corporation Commission, Oklahoma City, Oklahoma, for Appellee Oklahoma Corporation Commission.

Melanie W. Rughani, Anthony J. Hendricks, Randall J. Yates, Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, for Appellee Public Service Company of Oklahoma.

Thomas P. Schroedter, Hall Estill Hardwick Gable Golden & Nelson P.C., Oklahoma City, Oklahoma, for Appellee Oklahoma Industrial Energy Consumers.

JETT, J.:

¶1 The Oklahoma Constitution delegates ratemaking for public utilities to the Corporation Commission. Okla. Const. art. IX, § 18. Guided by Article IX's text and structure, this Court has required issues involving ratemaking to be presented and decided by the Corporation Commission in the first instance. State ex rel. Cartwright v. Okla. Nat. Gas Co., 1982 OK 11640 P.2d 1341Turpen v. Okla. Corp. Comm'n, 1988 OK 126769 P.2d 1309Okla. Elec. Co-op., Inc. v. State ex rel. Okla. Corp. Comm'n, 1995 OK 91903 P.2d 321

¶2 In this case, Appellant Representative Tom Gann asks this Court to reverse the Corporation Commission's order modifying the rates charged by Public Service Company of Oklahoma (PSO) to customers. Mr. Gann seeks this relief based on issues that were not presented to and decided by the Commission. During the Commission proceedings, neither Gann nor any of the participants at the Corporation Commission argued that the evidence presented regarding an audit required by 74 O.S. § 9078

¶3 Article IX of the Oklahoma Constitution and Supreme Court precedent require that we refrain from deciding these issues in the first instance on appeal. Cartwright, 1982 OK 11Turpen, 1988 OK 126Okla. Elec. Co-op., 1995 OK 91

¶4 Gann's collateral attack on three unappealed orders entered at least two years ago also fails. As with Gann's arguments supporting his direct appeal of the Final Order setting PSO's rates, no party collaterally attacked the previous final orders in the proceedings before the Commission. This fact alone precludes Gann's collateral attack.

¶5 Additionally, Gann has not demonstrated that the Final Order directly before this Court relied on the previous orders to even raise the possibility of a collateral attack. And he is statutorily prohibited from contesting the validity of the Winter Storm Cost charge authorized by the Final Financing Order in a previous Commission cause, which provides the revenue to repay ratepayer-backed bonds previously approved by this Court. 74 O.S. § 9079see also In re Okla. Dev. Fin. Auth., 2022 OK 48511 P.3d 1048

¶6 The Corporation Commission's Final Order (No. 746624) is affirmed. 

I.

¶7 On April 23, 2021, the Oklahoma Legislature enacted the February 2021 Regulated Utility Consumer Protection Act (the Act) to address "the significant economic impact of the extreme weather event that occurred during the month of February 2021." 74 O.S. § 9071In re Okla. Dev. Fin. Auth., 2022 OK 41510 P.3d 165Id. at 166. The Act allowed ratepayer-backed bonds to issue so customers could pay the utility bill resulting from the winter storm at lower amounts over a longer period. 74 O.S. § 9071

¶8 On April 28, 2021, PSO filed an application to establish and securitize the costs incurred due to the February 2021 extreme weather event in PUD2021-000076. The Commission entered a Final Financing Order (No. 723434) approving PSO's fuel and financing costs on February 10, 2022. The Final Financing Order permitted the Oklahoma Development Finance Authority to issue ratepayer-backed bonds. (A)(1). PSO was authorized to add a Winter Storm Cost charge (WSC charge) to the monthly bill of every customer to service and repay the ratepayer-backed bonds. 74 O.S. §§ 9072

¶9 Upon approval of the Final Financing Order, Oklahoma Development Finance Authority filed an application to approve the bonds, which this Court granted. In re Okla. Dev. Fin. Auth., 2022 OK 4874 O.S. § 9079the revenues pledged to their payment shall be incontestable in any court in this state." (Emphasis added.) The revenues pledged to the payment of the bonds are the amounts collected from PSO's customers pursuant to the WSC charge.

¶10 The Act set forth continuing requirements for public utilities that securitized winter costs. It requires that "[a]n audit . . . shall be part of any general rate case filed by a regulated utility currently affected by a financing order with outstanding ratepayer-backed bonds." Id. § 9078. This audit compares "all amounts received from customers" by the utility because of the cost recovery charge with "the amounts paid by the utility to the Oklahoma Development Finance Authority or other holder of securitization property." Id.

¶11 On November 8, 2023, PSO gave notice at the Corporation Commission that it intended to initiate a ratemaking proceeding. Because PSO previously issued a bond pursuant to the Act, the ratemaking proceeding was subject to 74 O.S. § 9078See 74 O.S. § 18b

¶12 On January 31, 2024, PSO filed its formal application to modify its rates. PSO introduced thousands of pages of evidence in support of its application. Throughout the proceeding, PSO submitted additional testimony and documentary evidence. In response, the various parties to the proceeding filed opposing responsive testimony and documentary evidence also spanning thousands of pages. In total, the record in this proceeding is over 16,000 pages. Appellant Gann proffered no responsive testimony or documentary evidence.

¶13 On August 28, 2024, the Commission heard public comment on the ratemaking application. Gann did not appear and, at the time, had submitted no written comment.

¶14 At the beginning of October 2024, all parties except AARP entered an Amended Joint Stipulation and Settlement Agreement. 

     ¶15 At the October 3rd hearing, PSO, Oklahoma Industrial Energy Consumers, the Attorney General, and the Commission's Public Utility Division presented witnesses who testified that the stipulated rates were fair, just, and reasonable. Andrew Scribner from the Public Utilities Division also testified and filed   testimony about the audit of all amounts received from customers to pay the ratepayer-backed bonds as set forth in 74 O.S. § 9078

¶16 On October 25, 2024, the administrative law judge issued a report and recommendation regarding the settlement agreement and the stipulated rates presented at the October 3rd hearing. The report noted that Mr. Scribner's testimony about the PSO audit complied with 74 O.S. § 907874 O.S. § 9078

¶17 Rather than participating in the Commission's objection and evidentiary process, Appellant Gann chose to submit comments after the October 3rd settlement and rate hearing concluded, the record in the proceeding closed, and the objection period to the report and recommendation expired. Gann submitted four comments on December 16, 2024, and a fifth comment on December 19, 2024. None of Gann's comments addressed PSO's compliance with 74 O.S. § 9078

¶18 On January 15, 2025, the Commission entered a Final Order approving the settlement agreement and the stipulated rates, charges, and tariffs.

¶19 Mr. Gann appealed the Commission's Final Order on February 13, 2025. Gann argues that the Final Order should be reversed because Commissioner Hiett participated in the proceedings. He also claims PSO failed to produce sufficient evidence that it satisfied 74 O.S. § 9078

II.

¶20 We first address standing and conclude that Mr. Gann has standing to appeal the Final Order. Standing is a threshold question to be determined before the Court addresses any other issue. Cox Oklahoma Telecom, LLC v. State ex rel. Okla. Corp. Comm'n, 2007 OK 55164 P.3d 150i.e. non-parties) aggrieved by the ratemaking order.

¶21 Representative Gann was not a party to the Corporation Commission proceeding; however, he is a person aggrieved by the ratemaking order. An aggrieved person is one whose pecuniary interest in the subject matter is directly and injuriously affected. See Missouri-Kansas-Texas R. Co. v. State, 1985 OK 108712 P.2d 40

III. A.

¶22 While Gann meets the threshold requirement of standing, the specific issues he attempts to raise are not subject to this Court's appellate review in this case. According to Article IX, Section 20 of the Oklahoma Constitution, "[t]he Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only . . . ." Generally, a litigant may not raise an issue for the first time on appeal. Bane v. Anderson, Bryant & Co., 1989 OK 140786 P.2d 1230Bivins v. State ex rel. Okla. Mem'l Hosp., 1996 OK 5917 P.2d 456Cartwright, 1982 OK 11Turpen, 1988 OK 126Okla. Elec. Co-op., 1995 OK 91

¶23 In Cartwright v. Oklahoma Natural Gas Co., the Attorney General appealed a final order from a Corporation Commission ratemaking proceeding. 1982 OK 11Id. ¶ 12, 640 P.2d at 1346. The Court explained, "[o]rderly procedure and good administration require that objections available in proceedings . . . be made while [the Commission] has an opportunity for reconsideration and correction at the time appropriate under its practice." Id. ¶ 11, 640 P.2d at 1346. The requirement that an issue be exhausted prevents an adversary from sitting quietly by until a proceeding is closed to lodge its complaint, which could have been addressed if timely presented to the Commission. Id. This furthers "the purposes for which the Commission was created and of the adversary system which gives those purposes fulfilment." Id.

¶24 Issue exhaustion applies with equal force to parties and non-parties to the underlying Corporation Commission proceeding. In Oklahoma Electric Co-op v. State, the Oklahoma Electric Cooperative appealed a final order by the Commission in a proceeding in which it declined to intervene and become a party. 1995 OK 91Id. ¶ 18, 903 P.2d at 325. Applying Cartwright, this Court concluded that the non-exhausted issues would not be entertained on appeal. Id.

B.

¶25 As in Cartwright and Oklahoma Electric Co-op, Mr. Gann raises issues on appeal that could have been squarely presented to the Corporation Commission but were not. This is fatal to the appeal in this case.

1.

¶26 Mr. Gann's first argument--that the Final Order should be reversed because PSO did not introduce sufficient evidence of a § 9078 audit--fails for multiple reasons. Andrew Scribner from the Public Utilities Division testified at the October 3rd hearing that PSO complied with the audit requirement of 74 O.S. § 9078

¶27 Similarly, neither Gann nor any other party submitted exceptions to the administrative law judge's report and recommendation that referenced Scribner's testimony about § 9078. See Okla. Admin. Code § 165:5-13-5. And no one moved for rehearing nor applied to vacate the Final Order that also referenced § 9078 compliance. See Okla. Admin. Code § 165:5-17-1(a). If Gann was permitted to pursue his § 9078 argument now for the first time on appeal, it would allow exactly what Cartwright sought to prohibit--quietly sitting by until it is no longer possible to cure an alleged defect in the original tribunal. 1982 OK 11640 P.2d 1341

¶28 Finally, there is no support in Oklahoma law that public comments made by former Commissioner Anthony regarding audits under the Act constitutes issue exhaustion. See supra. n.5. This Court has never held that a Corporation Commissioner, who is the decisionmaker in a ratemaking proceeding, can make a substantive objection that will raise an issue for appellate review. Moreover, the Commission rules specify that public comments are not evidence but merely argument. Okla. Admin. Code § 165:5-13-3(k). Oklahoma Electric Co-op specifies that issues are exhausted and preserved by affirmative evidence or objection. 1995 OK 91Id. ¶ 7, 903 P.2d at ¶323. A single Commissioner's public comment does not exhaust and develop an issue for appellate review.

2.

¶29 For similar reasons, Mr. Gann fares no better with his second argument that the Final Order must be reversed because Commissioner Hiett participated in the ratemaking proceedings. We need not reach the issue of whether a Corporation Commissioner may ever be disqualified in a ratemaking proceeding because no party in this case moved to disqualify Commissioner Hiett at the Commission. Mr. Gann had ample opportunity to do so. See Okla. Admin. Code § 165:5-9-4(a). Instead, he waited until the record in the case was closed and filed a series of public comments, which are neither evidence nor legal objections. Okla. Admin. Code § 165:5-13-3(k); Okla. Elec. Co-op., 1995 OK 91

¶30 Because no party moved to disqualify Commissioner Hiett, we conclude that this issue was not exhausted and cannot be raised by Mr. Gann for the first time in this appeal.

C.

¶31 Mr. Gann's collateral attack of previous Corporation Commission orders is without merit. A litigant collaterally attacks a judgment when the attack is pursued in a manner not provided by law; "that is, in some other way than by appeal, writ of error, certiorari, or motion for a new trial." In re Hyde, 2011 OK 31255 P.3d 411State ex rel. Comm'n of Land Office v. Corp. Comm'n, 1979 OK 16590 P.2d 674

¶32 First, no party at the Corporation Commission pursued the collateral attack that Gann presents to this Court. Gann's collateral attack suffers the same fatal flaw as the direct appeal: the issue was not raised and exhausted at the Corporation Commission. Cartwright, 1982 OK 11Okla. Elec. Co-op., 1995 OK 91

¶33 Second, Gann fails to demonstrate what the law requires at the outset for this Court to consider the merits of the collateral attack. He fails to show that the Commission relied on any of the collaterally attacked orders in entering the order on direct appeal. This Court considers the merits of a collateral attack when a litigant shows that the order on direct appeal relied on the previous orders subject to the collateral attack. State ex rel. Comm'rs Land Office v. Corp. Comm'n, 1979 OK 16590 P.2d 674

¶34 Third, Gann's attack on the validity of the Winter Storm Cost charge authorized by the Final Financing Order (No. 723434) is prohibited by 74 O.S. § 9079

¶35 Upon approval of the Final Financing Order, the Oklahoma Development Finance Authority filed an application with this Court to approve the bonds. In re Okla. Dev. Fin. Auth., 2022 OK 48Id. ¶ 10, 511 P.3d at 1051.

¶36 In Mr. Gann's collateral attack, he requests that the Final Financing Order be declared void and that this Court order the Corporation Commission

      (a) to prevent any further collection of the WSC charge implemented pursuant to [the Final Financing Order] . . . and, (b) to order the amounts that have already been collected to be refunded to customers, because a void judgment is no judgment at all.

(Gann Brief-in-Chief at 48 (citation modified).) The relief Mr. Gann requests is barred by statute. According to 74 O.S. § 9079

      "[t]he decision of the Court shall be a judicial determination of the validity of the bonds, shall be conclusive as to the Authority, the state, its officers, agents and instrumentalities, and all other persons, and thereafter the bonds so approved and the revenues pledged to their payment shall be incontestable in any court in this state."

(Emphasis added.) The amounts collected from PSO's customers pursuant to the WSC charge are the "revenues pledged" to the payment of the ratepayer-backed bonds previously approved by this Court. Section 9079 definitively prohibits the type of collateral attack Gann lodges against the Final Financing Order.

¶ 37 We reject Mr. Gann's attempt to collaterally attack orders in PUD2021-000076 and PUD2022-000093.

IV.

¶38 Appellant Gann's attempt to overturn the Final Order in PUD2023-000086 cannot succeed because the issues he raises on appeal were not exhausted at the Corporation Commission. We also reject Gann's attempt to collaterally attack orders in PUD2021-000076 and PUD2022-000093.

FINAL ORDER OF THE CORPORATION COMMISSION AFFIRMED

Rowe, C.J. (by separate writing), Winchester, Edmondson, Combs, Gurich, Darby, Kane, and Jett, JJ., concur.

Kuehn, V.C.J., not participating.

FOOTNOTES

74 O.S. § 9078

Id. § 9074(A)(3). "The rights and interests to receive revenues collected by a regulated utility through the irrevocable and nonbypassable mechanism" constitutes "a securitization property right." 74 O.S. § 9075See id. § 9077(A). The proceeds of the bond sale would be paid to PSO. Id.

Okla. Elec. Co-op., Inc., 1995 OK 91

See State ex rel. Fugate v. Stitt, 2025 OK 54577 P.3d 265

 

ROWE, C.J., CONCURRING: 

¶1 In February 2021, record-setting cold temperatures plagued the State of Oklahoma for fourteen (14) days, causing a shortage of natural gas. Oklahoma's utility companies continued to purchase natural gas during the winter storm at incredibly high prices, which exceeded their entire fuel acquisition cost in 2020. To recover fuel expenses, the Oklahoma Legislature passed the February 2021 Regulated Utility Consumer Protection Act74 O.S. § 9071

¶2 The Public Service Company of Oklahoma ("PSO"), among other utility companies, submitted its application with the Corporation Commission to determine that PSO incurred $675,200,000 in fuel costs during the February 2021 winter storm. PSO, the Commission's Public Utility Division, the Oklahoma Attorney General's office, and other large stakeholders (including the American Association of Retired Persons (AARP), Walmart, and Oklahoma Industrial Energy Consumers) entered settlement negotiations regarding PSO's application. Id. All the parties, except AARP and the Attorney General, entered into a Settlement Agreement that approved PSO to recover $688,000,000. Id.

¶3 After evidence for and against the Settlement Agreement was presented in hearings before an administrative law judge and the Corporation Commission, the Corporation Commission issued a Final Financing Order approving the $688,000,000 in fuel costs, financing costs, and interest. Thereafter, the Oklahoma Development Finance Authority filed its application for this Court to assume original jurisdiction for the approval of the ratepayer backed bonds, as required by 74 O.S. § 9079In re Application of Oklahoma Development Finance Authority, 2022 OK 48511 P.3d 1048

¶4 In January 2024, PSO filed an application with the Corporation Commission requesting approval to increase rates and charges. Following hearings before an administrative law judge and the Commission, the application was approved, and a final order was entered January 15, 2025. Mr. Gann subsequently filed this appeal raising three issues on appeal:

(1) Whether the Commission failed to conduct an audit of PSO's 2021 Winter Storm Bonds in accordance with 74 O.S. § 9078

(2) Whether Commissioner Hiett should have recused himself in the underlying case, and if his failure to do so violated PSO customers' due process rights; and

(3) Whether the Ethics Commission has the exclusive power to interpret Ethics Rules.

¶5 In 2022, to pay for the unprecedented costs of the winter storm, we approved $3,270,000,000 in bonded indebtedness to be borne by the people of Oklahoma--an amount near one third of the State's FY 2022 budget appropriations of approximately $9,060,000,000. Because Protesters did not raise their concerns below or appeal the Final Financing Order, their questions concerning the approval of over 3 billion dollars went unanswered. And even though the Protesters submitted their legitimate questions to us concerning the settlement agreement, our review was limited to determining whether the bonds facially violated the law. 74 O.S. § 9079

¶6 Today, the bell has been rung and cannot be unrung. Once we approved the issuance of the bonds, state law forbids any collateral attack on their validity. 74 O.S. § 9079Bailey v. State of Oklahoma ex rel. Service Oklahoma, 2025 OK 34572 P.3d 1026

FOOTNOTES

74 O.S.2021, §§ 9070